ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
CAE USA, Inc. ) ASBCA No. 58006
)
Under Contract No. FA8223-10-C-0013 )

APPEARANCES FOR THE APPELLANT: Joseph P. Hornyak, Esq.
Alexander B. Ginsberg, Esq.
Holland & Knight LLP
Tysons Corner, VA

APPEARANCES FOR THE GOVERNMENT: Col Jennifer L. Martin, USAF
Air Force Chief Trial Attorney
Christopher M. McNulty, Esq.
Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE CLARKE

In a decision issued on 23 May 2013, the Board granted partial summary judgment to the Air Force and dismissed the majority of CAE USA, Inc's (CAE) arguments. *CAE USA, Inc.*, ASBCA No. 58006, 13 BCA ¶ 35,323. However, the Board left the case open for the parties to deal with CAE's argument that the Service Contract Act placed an affirmative duty on the contracting officer (CO) to provide a complete collective bargaining agreement (CBA) to bidders and that the CO failed to discharge that duty. It was undisputed that the CBA provided by the CO referred to but did not attach the predecessor contractor's corporate benefit program guide that identified fringe benefits not detailed in the CBA. It was also clear that CAE was aware that the CBA did not include details of these fringe benefits, that CAE failed to inquire about these fringe benefits and instead based its bid on its estimate of what those benefits would cost. When CAE realized that the benefits were greater than it accounted for in its bid, it paid the increased benefits and filed a claim resulting in this appeal. We remanded the appeal to the parties to brief these remaining issues. The parties elected to submit the appeal on the record under Board Rule 11. The Board considers entitlement only. The Board has jurisdiction pursuant to the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 7101-7109. While we assume familiarity with our decision on the motion for summary judgment (MSJ), its Statement of Facts (SOF) were for purposes of the motion only and thus some are repeated herein along with new findings to incorporate additional evidence accompanying the Rule 11 submissions.

## FINDINGS OF FACT

1. On 6 November 2009, the government posted Solicitation No. FA8223-10-R-50094, entitled "KC-135 Aircrew Training System (ATS) Re-compete" on the Federal Business Opportunities website (R4, tab 3). The Request for Proposal (RFP) called for services in support of the KC-135 ATS at thirteen Air Force bases worldwide (R4, tab 4). The RFP contemplated the award of a firm fixed-price contract with a three-month "ramp-up" period, a one-year base period and nine one-year option periods for a total of ten years (R4, tab 4 at 5-201, 204).

2. The CO for the RFP, Lance Hardman, was the CO for the incumbent KC-135 ATS contract, which at the time had been held by FlightSafety Services Corporation (FSSC) for approximately 15 years (app. br., ex. A, Hardman dep. (Hardman dep.), tr. at 18).

3. On 1 March and 1 April 2010 respectively, FSSC executed new CBAs for the three-year period ending in 2013 (R4, tabs 11 at 3, 63) and because the CBAs originally posted to the RFP website were expiring, Hardman thereafter contacted his counterpart at FSSC, Candace Tomlinson, to obtain the updated CBAs to post. Hardman asked Tomlinson for the CBAs and for "those things that would have an impact on cost." (Hardman dep., tr. at 38-40)

4. On 26 April 2010, by RFP Amendment No. 0006, the relevant FSSC CBAs were incorporated into the solicitation (R4, tab 11). The CBAs provided by Air Force CO Hardman to CAE included Article XVII which provided that the employees "shall continue to fully participate in and be entitled to the Employer's Corporate Benefit Program including the 401(k) program applicable to program employees not subject to collective bargaining agreement" (R4, tab 11 at 33, 93). It also included Article XVIII which allowed employees to "buy Purchased Time Off (PTO) to supplement Vacation...through the use of the Flexible Benefits Program with Flex Credit Dollars."

5. The CBAs did not include details of the incumbent contractor's Corporate Benefit Program (R4, tab 11; gov't MSJ reply br., attach. 1, Hardman decl. (Hardman decl.) at 3, ¶ 7). The CBA's table of contents listed attachments A (seniority dates), B (hours of work and pay), C (paid time off), and D (unpaid time off) (R4, tab 11 at 4-5, 42, 45, 49, 58). The CBA provided to CAE included attachment A, but not attachments B, C, and D.

6. In his deposition, Mr. Hardman testified that when he received the CBA he noticed that attachments B through D were not included and asked FSSC for them. Ms. Tomlinson stated that attachments B through D were company policies that did not affect cost and as such would not be provided. (Hardman dep., tr. at 45-46). Attachments B, C, and D did not contain any cost information that would assist a bidder in determining

2

how much FSSC was paying for these benefits (Hardman decl. at 4, ¶ 8). FSSC's Users' Guide to the Benefits Program included details of the fringe benefits paid to employees that were not disclosed in the CBA (R4, tab 7 at 1, 5, 10).

7. In an internal email, dated 10 November 2009, Mr. Jim Ward, CAE, wrote:

> Teri attached is a summary of the WRAP Rates for the KC-135. The [sic] was very little information on benefits included in the CBA's. The CBA provides for 11 holidays per year and a normal vacation schedule. The CBA's did not list the costs of health insurance, disability insurance, 401K contribution, etc. Therefore I used $4.25 per hour as cash in lieu, same rate we employ at Little Rock.

(Gov't MSJ reply br., attach. 3)[1]

8. Appellant's proposal included the following:

### Labor Fringe

> Labor Fringe includes vacation, holiday, sick, jury duty, military leave, bereavement, and excused absence for direct employees, employee health benefits, FICA, FUTA, SUTA, Unemployment Tax, Workmen's Compensation, 401(k) match, Short Term Disability (STD) and Long Term Disability (LTD). Under our DCAA audited accounting system, these costs are pooled and allocated to all CAE programs/proposals as a percentage factor applied to direct labor.

(R4, tab 6 at 9)

9. Contract No. FA8223-10-C-0013 for the Aircrew Training System (ATS) requirement was awarded to CAE on 31 August 2010 (R4, tab 1).

10. In a 7 January 2011 email to CO Hardman, Ms. Lowe, CAE, wrote:

> I wanted to give you a heads up that we have discovered that the CBAs that were provided as part of the

---

[1] Attachment 3 included protective markings on the email and attached rate data. Pursuant to concurrence of appellant in its 16 April 2013 email, the Board removed and shredded the rate data and cancelled the markings on the email.

RFP were not complete (i.e., did not [sic] attachments). During our meeting earlier this week with the Union, these missing attachments were provided. A quick review indicates the attachments contain additional benefits.[2] We are in the process of thoroughly assessing the impact. We will provide formal notice to you, including the cost delta, no later than COB next Thursday (January 13th).

(R4, tab 18)

11. On 28 June 2011, CAE submitted a Request for Equitable Adjustment (REA) to the CO for $668,094[3] in additional benefits that were not identified during the RFP phase by the government. The REA contains a certification that does not appear to meet all the requirements of the CDA. (R4, tab 29) On 20 December 2011, the CO denied the REA. The CO's letter did not identify itself as a final decision and did not contain any appeal rights language. (R4, tab 32) On 19 January 2012, CAE disagreed with the CO's 20 December letter and requested a meeting to discuss the matter (R4, tab 34). On 30 January 2012, the CO denied CAE's request for a meeting and stated that his denial of the REA was final (R4, tab 35). On 17 February 2012, CAE filed a corrected CDA certification of the 28 June 2011 REA with the CO (R4, tab 36). On 23 February 2012 CAE filed a notice of appeal from the CO's 20 December 2011 denial with this Board. The appeal was docketed on 24 February 2012. (Bd. corr. file) Neither party has questioned our jurisdiction.

12. The successor contractor provision of the Service Contract Act provides:

> (c) Preservation of wages and benefits due under predecessor contracts.-
>
> (1) In general.–Under a contract which succeeds a contract subject to this chapter, and under which substantially the same services are furnished, **a contractor or subcontractor may not pay a service employee less than the wages and fringe benefits the service employee would have received under the predecessor contract**, including accrued wages and fringe benefits and any prospective increases in wages and fringe benefits provided for in a

---

[2] This statement is inaccurate. The missing attachments did not include benefit information that was in the Corporate Benefits Program Guide (finding ¶ 1).

[3] The amount of the REA is apparently contained in attachments to the REA that are not in the record. The amount stated in the finding comes from CAE's 17 February 2012 filing with the CO.

4

collective-bargaining agreement as a result of arm's-length negotiations. [Bold added]

41 U.S.C. § 6707(c)(1).

13. The Federal Acquisition Regulation (FAR) includes the following:

FAR 22.1008-2 Section 4(c) successorship with incumbent contractor collective bargaining agreement.

(a) Early in the acquisition cycle, the contracting officer shall determine whether section 4(c)[4] of the Act affects the new acquisition. The contracting officer shall determine whether there is a predecessor contract covered by the Act, and if so, whether the incumbent prime contractor or its subcontractors and any of their employees have a collective bargaining agreement.

....

(d)(1) If section 4(c) of the Act applies, **the contracting officer shall obtain a copy of any collective bargaining agreement between an incumbent contractor or subcontractor and its employees**. Obtaining a copy of an incumbent contractor's collective bargaining agreement may involve coordination with the administrative contracting officer responsible for administering the predecessor contract. **(Paragraph (m) of the clause at 52.222-41, Service Contract Act of 1965, requires the incumbent prime contractor to furnish the contracting officer a copy of each collective bargaining agreement.)**

(2) If the contracting officer has timely received the collective bargaining agreement, the contracting officer may use the WDOL website to prepare a wage determination referencing the agreement and incorporate that wage determination, **attached to a complete copy of the collective bargaining agreement**, into the successor contract action. In using the WDOL process, it is not necessary to submit a copy

---

4 Section 4(c) of the original SCA is the successor contractor provision now at 41 U.S.C. § 6707(c)(1).

5

of the collective bargaining agreement to the Department of Labor unless requested to do so.

(3) The contracting officer may also use the e98 process on WDOL to request that the Department of Labor prepare the cover wage determination. The Department of Labor's response to the e98 may include a request for the contracting officer to submit a **complete copy of the collective bargaining agreement**. Any questions regarding the applicability of the Act to a collective bargaining agreement should be directed to the agency labor advisor. [Bold added]

The contract incorporated by reference FAR 52.222-41, SERVICE CONTRACT ACT OF 1965 (NOV 2007) which provided in part as follows:

(f) *Successor Contracts.* If this contract succeeds a contract subject to the Act under which substantially the same services were furnished in the same locality and service employees were paid wages and fringe benefits provided for in a collective bargaining agreement, in the absence of the minimum wage attachment for this contract setting forth such collectively bargained wage rates and fringe benefits, **neither the Contractor nor any subcontractor under this contract shall pay any service employee performing any of the contract work (regardless of whether or not such employee was employed under the predecessor contract), less than the wages and fringe benefits provided for in such collective bargaining agreement, to which such employee would have been entitled if employed under the predecessor contract**, including accrued wages and fringe benefits and any prospective increases in wages and fringe benefits provided for under such agreement....

....

(m) *Collective Bargaining Agreements Applicable to Service Employees.* If wages to be paid or fringe benefits to be furnished any service employees employed by the Government Prime Contractor or any subcontractor under the contract are provided for in a collective bargaining agreement which is or will be effective during any period in which the

6

contract is being performed, the **Government Prime Contractor shall report such fact to the Contracting Officer, together with full information as to the application and accrual of such wages and fringe benefits,** including any prospective increase, to service employees engaged in work on the contract, and a copy of the collective bargaining agreement. **Such report shall be made upon commencing performance of the contract,** in the case of collective bargaining agreements effective at such time, and in the case of such agreements or provisions or amendments thereof effective at a later time during the period of contract performance such agreements shall be reported promptly after negotiation thereof. [Bold added]

## DECISION

### Contention of the Parties

CAE, using the doctrine of superior knowledge as a template, contends that the SCA and implementing regulations (Federal Acquisition Regulations "FAR") imposed upon CO Hardman an obligation to supply all offerors "all information regarding the amount of wages and fringe benefits that the predecessor contractor had agreed to in the subject collective bargaining agreements" (app. br. at 2). CAE argues that the remedy for the CO's breach of this obligation is compensation for the additional fringe benefit costs it incurred but were not included in its bid.

The Air Force contends that the SCA and FAR do not impose an "affirmative duty for a contracting officer to seek out wage or fringe benefit information that may be missing from a collective bargaining agreement" (gov't br. at 1). To do so, it argues, "is simply too great a burden" and "is akin to strict liability" (gov't br. at 5, 6). The government also argues that normal law creating a duty to inquire when a patent ambiguity exists should apply (gov't br. at 8).

### Analysis

The facts are undisputed. The CO provided CAE a copy of the relevant CBA, but all the details relevant to the existing fringe benefits were not contained in the CBA, including its attachments. The CBA stated that employees would participate in FSSC's corporate benefit program, but the details of that program were not in the CBA (finding ¶ 5). CAE was aware that it did not possess these details, but did not inquire of the government about this matter and instead made its own assumptions and used a cost estimate in its bid (finding ¶ 7). After contract award, during negotiations with unions, CAE obtained the missing information on the fringe benefits and realized that the

7

estimate used in its bid understated the actual fringe benefits provided in FSSC's corporate benefit program (finding ¶ 10). As required by law, CAE paid the higher fringe benefits and filed this claim to recover the increased costs.

We approach our analysis in two parts: (1) does the SCA/FAR impose a duty on the government to provide a complete CBA to bidders; and, (2) if so, does CAE's failure to advise the government of the CBA's incompleteness and decision to bid on its undisclosed assumptions preclude it from recovery? We take these in order.

## Duty to Provide A Complete CBA

Following the requirements of FAR 22.1008-2[5] (finding ¶ 13), the CO obtained the relevant CBAs and incorporated them into the solicitation (finding ¶ 1) to establish the wage and fringe benefits necessary for any follow-on contractor to FSSC to pay to comply with the SCA, 41 U.S.C. § 6707 (c)(1) (finding ¶ 12). There can be no reasonable doubt that pursuant to FAR, it was the responsibility of the CO to provide a complete CBA and that the CBA provided was not complete.[6] Without the details of the FSSC fringe benefit program that was referenced in, but not provided with the CBA, offerors could not ascertain the amount of the wage and fringe benefits that were required by the RFP, pursuant to the SCA and FAR.

## Duty to Inquire

It is equally without doubt that CAE knew the CBA did not contain the complete information necessary to determine what the full wage and fringe benefit amounts necessary to comply with the SCA and FAR were (finding ¶ 7). Its choice, when faced with this situation, was either make assumptions to formulate its bid[7], or inquire of the government for the complete information. Having chosen to submit an offer on the basis of its own assumptions, without notice to the government of the incompleteness of the CBA or what CAE's assumptions were, it cannot now be heard to complain that its assumptions were not correct. We are of the view that this appeal is similar to our line of cases dealing not with contract provisions that are difficult to interpret due to an ambiguity, but those that have relevant information missing. *Cambridge Marine Industries, Inc.*, ASBCA No. 37355, 91-2 BCA ¶ 23,894, *aff'd*, 951 F.2d 1266 (Fed. Cir.

---

[5] We conclude that the FAR's requirement that the CO provide a complete CBA and provide it to bidders is intended to benefit contractors.

[6] Since the CBA incorporated the fringe benefit program by reference, we do not consider it "complete" without that benefit information.

[7] Of course, neither the SCA nor FAR contain any requirements as to what amounts an offeror puts in its offer. They dictate what amounts shall be paid to the employees performing the contract work.

1991) (table).[8]  There is nothing in the SCA or the FAR that would require the government to become the indemnitor for any difference between appellant's offer with respect to wages and fringe benefits and their eventual cost that resulted from the CBA's incompleteness when CAE knew of such incompleteness and failed to notify the government, nor is the government the guarantor of the correctness of CAE's assumptions when it failed to inquire regarding these assumptions.[9]

CONCLUSION

In accordance with the foregoing, we deny the appeal.

Dated:  27 January 2014

CRAIG S. CLARKE
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Vice Chairman
Armed Services Board
of Contract Appeals

---

[8]  Moreover, the parties' arguments over whether the missing information amounts to a patent or latent ambiguity are not material since CAE had actual knowledge of the omission.

[9]  The integrity of the bidding process would suffer if it were allowable for one offeror to recognize that needed information was omitted from the RFP and fail to advise the government and make its own assumptions, relying on the government to make it whole if its assumptions were wrong.  We have no doubt that if CAE's assumptions resulted in the amounts in its offer exceeding the CBA's wage and fringe benefit amounts, CAE would not be insisting on refunding that amount to the government.

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 58006, Appeal of CAE USA, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals